

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **BROTHERS MATERIALS, LTD., A** | § | **CASE NO: 14-50121** |
| **TEXAS LIMITED PARTNERSHIP** | § | |
|    **Debtor** | § | |
| | § | **CHAPTER 11** |

**MEMORANDUM OPINION**
**GRANTING DEBTOR'S MOTION TO ENFORCE PLAN PROVISIONS**
[*Resolving ECF Nos. 144, 146*]

**I. INTRODUCTION**

The instant matter before this Court involves a secured creditor's attempt at unwringing the confirmation bell. Confirmation of a chapter 11 plan, which includes provisions for the reorganization, or in this case, the liquidation of a debtor, and dealing with the claims and interest of the various stakeholders is the pinnacle of the chapter 11 process. It is hornbook law that an order confirming a plan is final and inviolable absent very limited grounds invoking the revocation of the confirmation order. This Court is faced with a single issue relating to Debtor's confirmed plan; namely, whether a secured creditor is bound to the terms of a confirmed plan that seeks to use the proceeds from the sale of a non-debtor asset to pay plan administrative expenses ahead of the secured creditor's claim.

Pending before this Court are two self-styled pleadings: first, filed by Debtor, is its "Motion to Enforce Plan Provisions," [Case No. 14-50121, ECF No. 144] (the "***Motion***"), and second, filed by the Internal Revenue Service ("***IRS***"), is its "United States of America's Objection to Debtor's Motion to Enforce Plan Provisions (Dkt. No. 144)," [ECF No. 146] (the "***Objection***"). The Motion seeks enforcement of Debtor's confirmed Plan, which provides for

the payment of administrative expenses before payment of the IRS' claim by and through the proceeds of a non-debtor asset sale. [ECF No. 144]; *see also* [ECF No. 116] (the "***Plan***"); [ECF No. 126] (confirming the Plan). Conversely, the Objection contends that the IRS is not bound by the terms of the Plan because the proceeds from the non-debtor asset sale cannot be used to pay administrative fees prior to satisfying a lien. *See generally* [ECF No. 146]. This Court now considers the pleadings on file, the evidence presented, the arguments lodged by Debtor and the IRS, the United States Bankruptcy Code,[1] and relevant case law and determines that Debtor's confirmed Plan is binding and the Motion should be granted.

## II.  FINDINGS OF FACT

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and 9014. To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

On June 3, 2014, Brother's Materials, Ltd. (the "***Debtor***"), a Texas Limited Partnership, filed its voluntary petition under chapter 11 of title 11 of the United States Code. [ECF No. 1]. On June 24, 2014, the IRS filed its proof of claim in the amount of $2,480,027.23. [Claim No. 1-1] (the "***Claim***"). Subsequently, the IRS amended its Claim various times, ultimately claiming $2,474,750.09 against the Debtor's estate of which $2,441,452.40 is secured, $20,227.51 is priority and $13,070.18 is classified as a general unsecured claim. [Claim Nos. 1-2, 1-3, 1-4, 1-5, 1-6]. The Claim includes twenty-one separate liens that make up the entirety of the IRS's

---

[1] Any reference to "***Code***" or "***Bankruptcy Code***" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

Claim.  [Claim No. 1-6].  The IRS attributes eight liens to Brothers Paving, LLC, and thirteen liens to Brothers Paving, Inc.  *Id.*  The Debtor filed an objection to the IRS's Claim on November 20, 2014, essentially arguing that the taxes claimed by the IRS were actually incurred by Brothers Paving, Inc. or Brothers Paving, LLC, respectively, but not the Debtor.  *See generally* [ECF No. 52].  In the IRS's response, filed December 10, 2014, it countered that, although Debtor did not specifically incur the disputed taxes, federal taxes may be collected from the taxpayer's alter ego.  [ECF No. 59 at ¶ 4].  Ultimately, Debtor included, *inter alia*, provisions in the Plan to partially resolve this issue without withdrawing its objection to the IRS's Claim or litigating the Objection.  [ECF No. 116].

On November 13, 2015, this Court conducted a hearing approving Debtor's disclosure statement.  [ECF No. 113].  The IRS appeared telephonically at that hearing and did not object.  [ECF No. 112].  At this hearing, this Court fixed the deadline for voting and objections as January 8, 2016.  [ECF No. 113].  The IRS received notice of this Court's Order fixing deadlines on November 18, 2015.  [ECF No. 114].  On November 30, 2015, Debtor filed its First Amended (Corrected) Combined Plan and Disclosure Statement.  [ECF No. 116] (the "***Plan***").  On December 1, 2015, the IRS received a copy of the Plan and notice of the date of the confirmation hearing.  [ECF No. 117 at 3]. The IRS did not file an objection to the Plan.

The Plan lists two categories of assets that remain to be sold: (1) Debtor's remaining equipment along with equipment "owned and titled in the name of either Brother's Paving, Inc., or Brothers Paving LLC." listed in Exhibit A to the Plan (the "***Equipment***"); and (2) a 10.8619-acre tract in Webb County, Texas (the "***Property***") jointly-owned by the Debtor's principals Rogelio and Ramon Soliz (the "***Soliz Brothers***").  [ECF No. 116 at 2].  Specifically, the Plan provides that:

> Proceeds from the sale of the Debtor's assets, as well as property contributed to
> the plan by the Debtor's equity shareholders will be paid, after the payment of
> costs of administration (including professional fees and U.S. Trustee's fees), to
> the payment of allowed third party claims in the order of their priority until such
> funds are exhausted.

*Id.* at 1-2.   Referring to the IRS lien, the Plan states that the lien "as settled would attach to all of

the Debtor's assets . . . is inferior to the Commerce Bank lien . . . attaches to . . . the 10.8619

acres owned jointly by Rogelio and Ramon Soliz."   *Id.* at 7.   Further, in that same section, it

states that all assets, including the Property and assets owned by Brother's Paving, Inc. and

Brother's Paving, LLC, "will be sold in the liquidation under the Plan."   *Id.*   In a section of the

Plan titled "The Plan and the I.R.S. Settlement," the Plan states that the Soliz Brothers will sell

the Property "with the net proceeds being paid to the I.R.S. pursuant to the Soliz Brothers'

settlement with the I.R.S."   *Id.* at 10.   Under "Treatment of Classes and Claims," the Plan further

discusses the IRS' Claim under Class 2.   *Id.* at 15.   Regarding the IRS' Claim, the Plan provides

that:

> The only amounts the Debtor will pay on the I.R.S. claim, will be any proceeds
> from the sale of equipment or personal property assets that are in excess of
> administrative expenses, and any amounts necessary to pay the Bank debt in full.
> The balance of the I.R.S. debt will be the subject of a settlement between the
> I.R.S. and the Soliz Brothers.   The Soliz Brothers have agreed that the proceeds
> from the sale of the 10.8619 acres will be paid first to satisfy administrative
> expenses, then the Debtor's obligation to the bank, and then to pay the I.R.S.
> settlement.

*Id.*

On January 15, 2016, the confirmation hearing was held and, after taking testimony from

Mr. Ramon Soliz, Debtor's representative, the Plan was confirmed.   *See generally* [ECF Nos.

124, 126].   The IRS did not attend the confirmation hearing.   During the hearing, this Court

noted that there had been no objections to confirmation of the Plan.   [ECF No. 124].   The IRS

received notice of the Plan's confirmation on January 22, 2015.  [ECF No. 127 at 28].  The IRS neither objected to nor appealed this Court's Order confirming the Plan.

On January 19, 2016, Mr. Carl M. Barto ("***Debtor's Counsel***") filed his Fee Application of Allowance for Compensation, for the period from May 30, 2014 through and including January 15, 2016, in the amount of $84,039.06—consisting of professional fees in the amount of $83,440.00 and costs advanced of $599.06—for the period requested.  [ECF No. 125] (the "***Application***").  Upon filing of the Application, the IRS received timely notice from the Debtor.  *Id.* at 13.  The IRS did not file an objection.  This Court granted the Application on February 17, 2016.  [ECF No. 129].  The IRS received notice of which on February 19, 2016, and did not appeal this Court's Order.  [ECF No. 130].

On April 15, 2016, Debtor filed its "Emergency Motion to Sell Equipment and Approve Sale Procedure and Form of Notice" that requested the Court allow Debtor's Equipment to be sold at auction, as well as approve a Notice of Sale to advertise in the Laredo Morning Times. [ECF No. 132] (the "***Motion to Sell***").  While the IRS did not object to the sale, it did object to the sale proceeds being paid to Debtor's Counsel for his previously Court awarded administrative fees. [ECF No. 133].   This Court entered its Order granting Debtor's Expedited Motion to Sell Equipment free and clear of all liens, on April 29, 2016 wherein the primary lien holder, Commerce Bank, which was owed more than the amount of the sale proceeds, consented to the sale as did the IRS. [ECF No. 139].

Subsequently, on July 18, 2016, Debtor filed the Motion.  [ECF No. 144].  After application of funds on deposit in Debtor's Counsel's IOLTA account, and the payment of $5,000.00, there remains a $69,039.06 balance on Debtor's Counsel's Court awarded fees.  *Id.* at 2.  Debtor posits that this case remains open because it has yet to pay Debtor's Counsel his court

awarded attorney's fees.  *Id*.  As a result, Debtor seeks an order from this Court to have the unpaid balance of Debtor's Counsel's fees paid from the proceeds of the pending sale of the Property, jointly-owned by the Soliz Brothers, per the provisions of the Plan.  *Id*.  The Motion posits that the Property is being contributed by the Soliz Brothers, as equity shareholders, to be liquidated per express provisions of the Plan.  *Id*. at 4.  Moreover, the Motion relies on the Plan's provision addressing the IRS' Claim, which reads "the Soliz brothers have agreed that the proceeds from the sale of the 10.8619 acres will be paid first to satisfy administrative expenses, then to the Debtor's obligation to the bank, and then to pay the IRS settlement.  *Id*. (*quoting* [ECF No. 116 at 15]).  Debtor asseverates that the awarded fees qualify as administrative expenses pursuant to § 503(a), (b)(4), and are therefore entitled to be paid from the proceeds of the sale of the Property pursuant to the Plan.  [ECF No. 144 at 4].  Finally, Debtor argues that the IRS is bound by the express terms of the Plan because the IRS did not object to the Plan.  *Id*.

The IRS filed its Objection to the Motion on July 26, 2016 and lodges several arguments as to why Debtor's Motion should be denied.  [ECF No. 146].  First, the IRS contends that the Soliz Brother's agreement in the Plan to prefer an unsecured creditor—Debtor's Counsel—at the expense of the IRS' secured Claim is not binding.  *Id*. at ¶ 5.  An overarching contention of the Objection is that the Soliz Brothers, and not Debtor, own the Property, which is "fully encumbered by federal tax liens."  *Id*. at ¶ 1(b).  Further, the IRS argues that it never agreed, and does not agree now, that the proceeds of the sale of the Property can be used to pay administrative fees.  *Id*. at ¶ 6.  Thus, the IRS asserts that, despite the Plan provisions, neither the Debtor nor the Soliz brothers could bind the IRS to such an agreement.  *Id*. at ¶ 9.   Additionally, the IRS maintains that the Soliz Brothers cannot convert a fully encumbered non-debtor asset into an estate asset.  *See id*. at ¶ 8.  Moreover, in the alternative, the IRS contends that even if the

Property could be converted into an estate asset, the Motion must still be denied because "no administrative costs have been incurred in connection with either the asset's preservation or sale" pursuant to § 506(c). *Id.* The IRS argues that the administrative expenses the Motion seeks are not "potentially allowable" under § 506(c) and therefore, the Motion must be denied. *Id.* at ¶ 10.

On August 4, 2016, this Court conducted an evidentiary hearing on Debtor's Motion. [ECF No. 147] (the "***Hearing***"). This Court admitted the parties' agreed stipulation at the Hearing [ECF No. 153] (the "***Stipulation***") to wit:

1. The [Property] . . . belonged to [the Soliz Brother's], and it continues to be owned by them today.
2. Ramon Soliz's federal tax liabilities exceed $1,000,000. Approximately $700,000 of that liability is secured by federal tax liens.
3. Rogelio Soliz's federal tax liabilities exceed $1,000,000. Approximately $750,000 of that liability is secured by federal tax liens.
4. The [Property] at issue is currently under a contract for sale. . . . The purchase price under the contract is $650,000, and after paying costs . . . is expected to generate net proceeds of $510,633.07.
5. Commerce Bank also has a secured claim against the [Property].
6. The IRS filed a proof of claim for the debt owed to it.
7. The Court may take Judicial Notice of the [Claim] filed by the IRS, at claims docket 1-1 through 1-6.
8. That the proposed plan was served on the IRS.
9. That the IRS did not object to the version of the plan that was confirmed.
10. The plan was confirmed by the order at ECF No. 126 . . . .
11. The confirmation order was entered [on] January 15, 2016.
12. That the IRS has not filed a notice of appeal of the order confirming the plan.

*Id.* At the Hearing, Debtor argued that the plain language of the Plan supported the Motion, specifically the provision stating that "proceeds from the sale of Debtor's assets, as well as property contributed to the Plan by Debtor's equity shareholders, will be paid, after the payment of costs of administration . . ., to the payment of allowed third party claims." [ECF No. 116 at 1].

Conversely, the IRS maintained that the Property was never owned by the Debtor, but rather the Soliz Brothers.  Further, the IRS contends that the Soliz Brothers were attempting to contribute an asset to the Debtor's estate that was fully encumbered by liens, which essentially amounted to zero equity.  Relying on the Plan, the IRS argued that there was no need to object because the Plan states that the "net proceeds" from the Property sale will be "paid to the IRS pursuant to the Soliz Brothers' settlement with the IRS."  [ECF No. 116 at 10, ¶ 5].  Although the IRS did not contest the validity of Debtor's Counsel's fees, the IRS maintained that the sale proceeds from the Property did not fall within the Debtor's estate and thus could not be used to pay the administrative expenses.

In response, Debtor emphasizes that the phrase "net proceeds" within the Plan, indicates that net proceeds from the sale of the Property would necessarily involve the deduction of administrative expenses, such as Debtor's Counsel's fees.  *See id.*  Further, the Plan lists the Property as an asset that will be sold under the Plan.  *Id.* at 7, ¶ 5.  Debtor avers that because the IRS did not object to the Plan the IRS is now bound by its terms.

### III.  LEGAL STANDARD

The general rules of contract interpretation are instructive when interpreting a bankruptcy plan.  *LRI III v. Halla* (*In re LRI III, Ltd.*), 464 F. Appx. 263, 267 (5th Cir. 2012) (citing *In re Tex. Gen. Petroleum Corp.*, 52 F.3d 1330, 1335 (5th Cir. 1995)).  "[C]ourts regularly apply principles of contract interpretation to clarify the meaning of the language in reorganization plans."  *Compton v. Anderson* (*In re MPF Holdings US, LLC*), 701 F.3d 449, 457 (5th Cir. 2012).  This Court follows Texas state law as to the general principles of contract interpretation.  *LRI III*, 464 F. Appx. at 267.  In particular, Texas law provides that a "written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the

facts and circumstances surrounding the contract's execution, subject to the limitations of the parol-evidence rule." *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014). "To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).   Bankruptcy plans do not involve the proverbial "meeting of the minds" of a typical contract, and as such, there is no binding contract without the approval of the bankruptcy court through the confirmation process.   *In re House Nursery, Ltd.*, 2016 WL 519626, at *1, *5 (Bankr. E.D. Tex. Feb. 9, 2016).

### a.   The Effect of a Confirmed Plan

Upon plan confirmation, the Code provides:

> the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).  Non-individual debtors obtain an immediate discharge of all debts and the provisions of the confirmed plan bind both the debtor and creditors, regardless of whether a proof of claim has been filed, will be filed, or will even be allowed.  § 1141(a)-(d); *see also In re JCP Properties, Ltd.*, 540 B.R. at 606-11, 614.  *C.f. In re Taylor*, 132 F.3d 256, 260 (5th Cir. 1998) (holding that debtor's failure to use bankruptcy proceedings to determine the validity, or extent thereof, of an IRS lien did not make a confirmed plan *res judicata* upon the IRS); *In re Simmons*, 765 F.2d 547, 559 (5th Cir. 1985) (holding that a "secured creditor need not participate in a bankruptcy proceeding to preserve [its] lien").  Furthermore, § 1141 also acts to free "property dealt with by the plan … of all claims and interests of creditors."  § 1141(c).

The Supreme Court determined that a final order confirming a plan is binding upon parties who received notice of the plan's application to them and failed to timely object to or appeal confirmation. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010); *see also Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 152 (2009) (discussing the *res judicata* effect of a final order and the binding effect a final order has on "parties and those in privity with them"). Confirmation orders in bankruptcy proceedings are final judgments that have a binding effect on the parties involved. *Espinosa*, 559 U.S. at 269; *see also In re Good*, 428 B.R. 235, 244 (Bankr. E.D. Tex. 2010) (noting that a chapter 11 plan becomes "binding" fourteen days after the plan is confirmed pursuant to § 1141(a) and Fed. R. Bankr. P. 3020(e)). Thus, the crux of finding a final order binding upon a party is whether the challenging party received notice and was afforded an opportunity to litigate the contents of a plan or order. *Espinosa*, 559 U.S. at 271–72, 276. "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). Although notice is an integral component of this inquiry, the Fifth Circuit determined that a non-participating secured creditor cannot have its lien extinguished merely by receiving effective notice. *In re S. White Transp., Inc.*, 725 F.3d 494, 497–98 (5th Cir. 2013) (considering that "the word 'participation' connotes activity, and not mere nonfeasance"); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2587 (2012) (comparing the difference between taking part in an activity and choosing not to act). Implicitly, an unsecured creditor that receives notice and files a proof of claim can be found to have participated in the debtor's bankruptcy, thereby having no viable claim on debt extinguished by the debtor's plan of

reorganization.  *In re Treyson Dev., Inc.*, 2016 WL 1604347, at *1, *13 (Bankr. S.D. Tex. Apr. 19, 2016) (citing *In re S. White Transp., Inc.*, 725 F.3d at 498).

b. **Priority of Administrative Expenses in Bankruptcy Proceedings**

The Code provides that "the trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."  11 U.S.C. § 506(c).  Although administrative expenses are typically satisfied out of the bankruptcy estate, § 506(c) provides an exception that allows expenses to be recovered from property securing a claim if "(1) the expenditure was necessary, (2) the amounts expended were reasonable, and (3) the creditor benefitted from the expenses."  *Matter of Delta Towers, Ltd.*, 924 F.2d 74, 76 (5th Cir. 1991). Section 506(c) allows the trustee to collect administrative expenses that benefitted the collateral securing an allowed secured claim, rather than the bankruptcy estate in general.  *See generally Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13 (2000).

According to the Code, the government receives the eighth priority on "a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(A). In contrast, "administrative expenses allowed under § 503(b)," including compensation for an attorney's professional services, receive the second priority.  § 507(a)(2).  These expenses are "based on the time, the nature, the extent, and the value of such services … and reimbursement for actual, necessary expenses incurred by such attorney or accountant."  11 U.S.C. § 503(b)(4); *see also In re Woerner*, 783 F.3d 266, 274 (5th Cir. 2015) (holding that a court is permitted to "compensate an attorney not only for activities that were 'necessary,' but also for good gambles . . . even when those gambles do not produce an 'identifiable, tangible, and material benefit'").

# IV.  CONCLUSIONS OF LAW

## A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11."  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.  28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).  The question presented to this Court is whether the provisions of a confirmed plan that provide for the prioritized payment of creditors based on proceeds from the sale of property, which is not property of the estate, is binding when  one of the creditors involved holds a lien on the involved property.  [ECF No. 146].  The central issue in the instant matter involves "matters concerning the administration of the estate" and "determinations of the validity, extent, or priority of liens." § 157(b)(2)(k); s*ee also In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).[2]  Interpreting a confirmed plan to determine the priority of liens arises under title 11, thereby making this a core matter.  § 157(b)(2); *see Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987); *see also In re Nat'l Gypsum Co.*, 219 F. 3d 478, 483 (5th Cir. 2000) ("[T]he bankruptcy court [may] interpret and construe the Confirmation Order, Plan, and plan documents regarding matters as to which there is a substantial and immediate controversy.").  Thus, this Court maintains jurisdiction over this case.

This Court may only hear a case in which venue is proper.  28 U.S.C. § 1408.  Debtor is a Texas Limited Partnership with the principal place of business located in Laredo, Texas.  [ECF No. 1].  Therefore, venue is proper.

---

[2] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

### B.  Constitutional Authority to Enter a Final Order

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order.  *Stern v. Marshall*, 564 U.S. 462 (2011).  *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015) (holding that parties may consent to jurisdiction on non-core matters).  Here, this Court's entry of an order on the Motion is not a final order that is potentially in violation of *Stern* because there is no "final determination of the rights of the parties to secure the relief they seek."  *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1154–55 (5th Cir. 1988).  Rather, granting or denying the Motion involves enforcement of a confirmed plan, and thus, a ruling on the Motion is an interlocutory order that is not impacted by *Stern*.  *See Matter of Rupp & Bowman Co.*, 109 F.3d 237 (5th Cir. 1997); *see also Stern*, 564 U.S. at 498-500*; Catlin v. United States,* 324 U.S. 229, 223 (1945) (stating that an order is appealable if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment").

Alternatively, this Court concludes that it has the constitutional authority to enter a final judgment on the Motion.  As discussed above, this is a core matter pursuant to § 157(b)(2) since it requires this Court to interpret the Plan and determine the priority of liens.  *In re SBMC Healthcare, LLC*, 519 B.R. 172, 178 (Bankr. S.D. Tex. 2014) (acknowledging a bankruptcy court's "jurisdiction to interpret and enforce its own orders").  Therefore, this Court concludes that it has the constitutional authority to enter a final order in this matter.

### C.  The IRS is Bound to the Provisions to the Plan because the IRS Received Actual Notice of the Plan, Did Not Object to Confirmation of the Plan, and Has Not Timely Appealed the Confirmation Order

This Court must first determine whether the IRS is bound by the provisions of the Plan.  Debtor's Motion essentially seeks $69,039.06 in previously awarded administrative expenses,

i.e. attorney's fees, to be paid from the Property sales proceeds. [ECF No. 144]. This Court entered an Order confirming Debtor's Plan on January 15, 2016. [ECF No. 126]. Therefore, fourteen days later, the Debtor's Plan became a binding final order as a timely appeal had not been filed. *See* § 1141(a); Fed. R. Bankr. P. 3020(e). The IRS asserts that the Plan provision allowing administrative expenses to be paid from the sale of the Property is not binding on the IRS. [ECF No. 146 at 2]. *But see* § 1141(a). Specifically, the IRS contends that the IRS did not agree to use the proceeds from the sale of the Property to pay Debtor's administrative fees. [ECF No. 146 at 2]. Further, the IRS contends that the Property is fully encumbered by liens and therefore, the Plan's provisions cannot be binding on the IRS. *Id.* at 2-3. In order to avoid being bound by the Plan provisions, the IRS must demonstrate that it did not receive effective notice nor was it afforded an opportunity to litigate the contents of the Plan. *Espinosa*, 559 U.S. at 271–72, 276.

First, this Court must address whether the IRS had effective notice of the contents of the Plan. *See In re Treyson*, 2016 WL 1604347, at *12. As actual notice is not the due process standard, if a creditor receives actual notice then due process is "more than satisfied." *Espinosa*, 559 U.S. at 272. Here, the IRS was initially put on notice of Debtor's bankruptcy when Debtor filed its petition listing the IRS as a disputed priority creditor in Schedule E. [ECF No. 1 at 16]; *see also* [ECF No. 1 at 44] (listing the IRS in Debtor's creditor matrix). Moreover, the IRS capitalized on the notice and filed the Claim it now seeks to collect via the sale of the Property. [Claim No. 1-1]. Notwithstanding the foregoing, the IRS stipulated before this Court that it received a copy of the proposed Plan. [ECF No. 153]; *see also* [ECF No. 116 at 22]; [ECF No. 117, 118, 119]. The beginning of the Plan includes a statement in bold typeface reading "Your rights may be affected. You should read these papers carefully and discuss them with your

attorney, if you have one.  If you do not have an attorney, you may wish to consult one." [ECF No. 116 at 2-3].  In addition, the IRS received notice of the Plan's confirmation on January 22, 2015.  [ECF No. 127 at 28].  These facts are analogous to *Espinosa* where the Supreme Court found that the creditor received actual notice of the debtor's plan upon receiving a mailed notice and copy of the bankruptcy plan.  559 U.S. at 265, 272 (finding that a mailed notice and copy of the bankruptcy plan, including deadlines for filing an objection, and boldface type reading "Warning if you are a creditor your rights may be impaired by this plan" sufficed as actual notice to the creditor).  Moreover, the IRS stipulated to having received actual notice in addition to having been provided notice through the course of the bankruptcy, as stated above, thereby satisfying the requirements for due process.  *See In re Treyson*, 2016 WL 1604347, at *13 (holding that receiving notice via the schedules and filing a proof of claim in the bankruptcy more than satisfied the due process standard for notice under *Espinosa*); *see also Jones v. Flowers*, 547 U.S. 220, 225 (2006).

Having established that the IRS received actual notice of the Plan, this Court must also determine whether the IRS was afforded an opportunity to litigate the Plan's contents.  The IRS has been involved from the outset of Debtor's bankruptcy.  The IRS filed its Claim mere weeks after Debtor filed its petition.  *Compare* [ECF No. 1] *with* [Claim No. 1-1].  After Debtor objected to the IRS's Claim, the IRS filed a detailed response, hinging on the assertion that Debtor, as an alter-ego, is responsible for the Soliz Brothers' IRS debts.  [ECF No. 59 at ¶ 4]. The IRS appeared at the November 13, 2015 hearing where this Court approved Debtor's Disclosure Statement and set established objection and voting deadlines for the Plan.  [ECF No. 113].  Further, the IRS stipulates that the proposed plan was received and that no objections were made to the contents of the Plan.  [ECF No. 153].  In addition to the lack of an objection, a

review of the docket reveals that the IRS did not file a timely notice of appeal to the order confirming the Plan.  Actual participation in a case is sufficiently satisfied by filing a proof of claim and actively participating in the litigation of the Claim, as the IRS did here.  *See In re Treyson*, 2016 WL 1604347, at *13 (determining that a creditor who was put on notice by hearings throughout the case and filed a proof of claim participated in the proceeding to be bound by the confirmed plan); *In re Fayetteville-Floyd Gas Co.*, 2014 WL 8663585, at *1, *4 (Bankr. S.D. Tex. Nov. 17, 2014) (holding that filing a proof of claim and serving on the unsecured creditors committee qualified as sufficient participation pursuant to § 1141(c)).  Not only was the IRS afforded the opportunity to litigate, but the IRS took advantage of that opportunity and chose not to exercise its right to object to the Plan provision it presently seeks to avoid.  *See* [ECF Nos. 59, 69].  Pursuant to Fed. R. Bankr. P. 3020(b)(1), this Court fixed the deadline for objections to the Plan on January 8, 2016.  [ECF No. 113].  The time for the IRS to object to the Plan provision was prior to the expiration of the Court's deadline.  *Id.*  Despite the ample opportunity to do so, however, the IRS chose not to object.  Thus, the IRS was awarded a full opportunity to litigate the Plan pursuant to *Espinosa*.  *See In re Treyson*, 2016 WL 1604347, at *13.

The IRS relies on various authority throughout its Objection to support its assertion that the Motion should be denied.  [ECF No. 146 at 3-4] (*citing RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012); *R.F.C. v. Rhodes*, 214 F.2d 606, 607 (5th Cir. 1954); *L. Maxcy, Inc. v. Walker*, 119 F.2d 535, 536 (5th Cir. 1941)).  The IRS asserts that as a secured creditor, neither Debtor nor the Soliz Brothers had the authority to enter into an agreement to use the proceeds of the sale of the Property because it is fully encumbered collateral.  [ECF No. 146 at 3].  However, the authorities the IRS relies upon are factually

inapposite to the case at bar because the cited cases do not involve a confirmed plan, such as the Debtor's Plan in the instant case.  *See RadLAX Gateway Hotel*, 132 S. Ct. at 2073 (holding that a chapter 11 plan could not be confirmed that provided for the "sale of collateral free and clear of the [creditor's] lien, but does not permit the [creditor] to credit-bid at the sale"); *R.F.C.*, 214 F.2d at 606-07 (determining that a creditor who objected and did not file a claim could not be forced to contribute proceeds from a sale into the general bankruptcy estate); *L. Maxcy, Inc.*, 119 F.2d at 535-36 (involving a dispute as to whether the trustee was entitled to compensation for the "cost of preserving the property").  The IRS does not consider the impact of *Espinosa* which binds a creditor who received notice and was afforded an opportunity to litigate to the terms of a confirmed plan.  *See Espinosa*, 559 U.S. at 271; *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 590 (5th Cir. 2008) (acknowledging that confirmation of a plan "binds the debtor and all creditors vis-à-vis the debtor").  Therefore, the IRS is bound by Debtor's Plan. *See Espinosa*, 559 U.S at 271; *see also In re Seven Seas Petroleum, Inc.*, 522 F.3d at 590; *In re Treyson*, 2016 WL 1604347, at *14.

### D.   The Confirmed Plan Provides for the IRS to Receive Net Proceeds of the Property Sale after Payment of Administrative Fees and the Commerce Bank Claim

Having concluded that the IRS had actual notice and is therefore bound by the terms of the Plan, the analysis turns on what the terms of the Plan require.  The context of the Plan's development provides insight into its terms.  At the outset of Debtor's bankruptcy, the IRS filed its Claim in the amount of $2,466,419.62.  [Claim No. 1-2].  Debtor objected to the IRS's Claim because the taxes the IRS sought were not incurred by Debtor, but rather were incurred by Brothers Paving, Inc. or Brothers Paving, LLC—other entities the Soliz Brothers owned.  [ECF No. 52].  Conversely, the IRS countered that it is well-settled jurisprudence that unpaid federal

taxes can be collected from a taxpayer's alter ego, in this case the Debtor.  [ECF No. 59 at 2]
(citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 351 (1977)).  Debtor's objection to
the IRS' Claim was partially resolved by including provisions in the Plan addressing the sale of
non-debtor assets, including the Property.  [ECF No. 116 at 9-10].  When addressing the
treatment of proceeds from the sale of the Property, the Plan specifically provides:

> The only amounts the Debtor will pay on the IRS claim, will be any proceeds
> from the sale of equipment or personal property assets that are in excess of
> administrative expenses, and any amounts necessary to pay the Bank debt in full.
> The balance of the IRS debt will be subject of a settlement between the IRS and
> the Soliz Brothers.  The Soliz Brothers have agreed that the proceeds from the
> sale of the 10.8619 acres will be paid first to satisfy administrative expenses, then
> the Debtor's obligation to the bank, and then to pay the IRS settlement.

*Id.* at 15.

The analysis must now determine if there is any ambiguity in the terms of the Plan.  As a
general rule, this Court should apply the "principles of contract interpretation to clarify"
language in bankruptcy plans.  *In re MPF Holdings US*, 701 F.3d at 457.  The Plan plainly states
that the proceeds from the sale of Debtor's assets and non-debtor assets contributed to the estate
"will be paid after costs of administration (including professional fees), to the payment of
allowed third party claims in order of their priority until such funds are exhausted."  [ECF No.
116 at 9-10].  Debtor's Motion specifically seeks to enforce the Plan to pay Debtor's Counsel's
awarded administrative fees.  [ECF No. 144 at 4].

The Plan explicitly requires that the proceeds of the Property's sale first go to pay
administrative fees, which include Debtor's Counsel's fees, then to satisfy Commerce Bank's
lien, and then the remaining proceeds to the IRS.  [ECF No. 116 at 15].  The language of the Plan
provisions is unambiguous thereby negating the need for interpretation.  *In re Dahlgren Int'l.,
Inc.*, 147 B.R. 393, 399-400 (N.D. Tex. 1992) (finding that unambiguous language represents the

intention of the parties and does not require interpretation); *see also In re Guerrero*, 540 B.R. 270, 274–75 (Bankr. S.D. Tex. 2015) (discussing statutory interpretation). Therefore, as IRS is bound by Debtor's Plan, the IRS will receive the proceeds from the sale of the Property net of Debtor's Counsel awarded administrative expenses and Commerce Bank's lien.  *See Espinosa*, 559 U.S. at 271; *see also In re Treyson*, 2016 WL 1604347, at \*14.

### E.   Section 506(c) is Inapplicable to Debtor's Counsel's Awarded Administrative Fees, Which are Governed by the Provisions of the Confirmed Plan

Alternatively, the IRS contends that allowing administrative fees to be paid from the sale of the Property violates § 506(c) because the costs were not "incurred in connection with either the asset's preservation or sale."  [ECF No. 146 at 3].   This argument is without merit.  To wit, the IRS incorrectly conflates the administrative fees this Court awarded Debtor's Counsel as compensation for legal services performed on Debtor's behalf with administrative fees necessary for preserving and disposing of the Property.  *Compare* [ECF No. 129] *with* [ECF No. 146 at 3]; *see also In re Jack Kline Co.*, 440 B.R. 712, 751 (Bankr. S.D. Tex. 2010) (acknowledging that § 506(c) "allows for reasonable and necessary costs and expenses related to the preservation or disposal of property").   Allowed administrative expenses are generally "satisfied out of the bankruptcy estate."  *Matter of Delta Towers*, 924 F.2d at 76.   However, § 506(c) acts as an exception by allowing a trustee to collect administrative expenses associated with secured collateral from the sale of that secured collateral, rather than the general bankruptcy estate.  *Id.*

The Motion seeks to enforce the Plan to ensure Debtor's Counsel receives his court-awarded attorney's fees.  [ECF No. 144].  This Court awarded Debtor's Counsel's attorney's fees as "reasonable compensation for professional services rendered by an attorney" pursuant to § 503(b)(4).  [ECF No. 129]; *see generally Matter of DP Partners Ltd. P'ship*, 106 F.3d 667,

670–71 (5th Cir. 1997) (determining that § 503 does not provide courts with discretion and if an attorney meets the requirements of § 503(b)(4) they "shall recover administrative expenses"). Conversely, the IRS objects to the Motion because the administrative costs were not incurred in connection the sale or preservation of the Property as required to be compensable under § 506(c). [ECF No. 146 at 3].   However, the IRS's argument is inapposite to the facts of this case. Debtor's Counsel seeks attorney's fees from services provided during the bankruptcy in accordance with the terms of the Plan, rather than fees for services related to the Property sale. [ECF No. 144].   *But cf. In re McCombs*, 436 B.R. 421, 449 (Bankr. S.D. Tex. 2010) (allowing trustee to collect administrative expenses from the proceeds of secured collateral because "he effectuated the sales in order to preserve the value of the properties for the estate and fulfill his duty to the unsecured creditors").   Thus, as the Motion seeks to enforce the binding Plan to pay Debtor's Counsel's awarded administrative expenses in accordance to the Plan rather than co-opt the proceeds from the sale of the Property to pay administrative expenses unrelated to the sale, § 506(c) does not serve as a bar to granting the Motion.   *See Espinosa*, 559 U.S. at 271. Assuming, *arguendo*, that the Debtor's Plan does violate § 506(c), the IRS would be estopped from pursuing the Objection because the IRS still is bound by the terms of the Plan regardless of what § 506 may bar outside of this context.   *Id.*; *In re Treyson*, 2016 WL 1604347, at *14; *In re Franklin*, 448 B.R. 744, 748 (Bankr. M.D. La. 2011) (holding that even if creditor's untimely claim were allowed, the creditor "would be entitled to be paid on its claim only the amount that the plan provided, rather than the amount in its untimely proof of claim" because the confirmed plan was binding pursuant to *Espinosa*); *In re DeSardi*, 340 B.R. 790, 803 (Bankr. S.D. Tex. 2006) (noting that an issue regarding treatment of adequate protection reserve was resolved because "no party filed an objection to the order [and] [t]he deadline for objecting ha[d]

passed").

Although the IRS does not explicitly object to application of the Plan pursuant to §503(b)(4), this Court determines that even if the IRS was not bound by the Plan § 503(b)(4) and § 507 statutorily prioritize administrative expenses ahead of the IRS. *Compare* § 507(a)(2) (allowing "compensation for professional services rendered by an attorney) to receive second priority under the statutory scheme) *with* § 507(a)(8)(A) (listing claims held by the government for "tax[es] on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition" as receiving eighth priority under the statutory scheme). Collier on Bankruptcy notes that in order for a tax to receive priority under § 507(a)(2) "a court must determine that (1) the tax was "incurred" by the estate; and (2) the tax claim is not a claim which must be treated as a prepetition priority claim under section 507(a)(8)." 4-503 COLLIER ON BANKRUPTCY ¶ 503.07 (16th ed). The IRS concedes that the taxes are owed, in actuality, by alter-egos of the Debtor, including the Soliz Brothers, Brother's Paving, LLC., and Brother's Paving, Inc. [ECF No. 59 at ¶ 4]. Thus, the taxes were not incurred by the estate and cannot receive second priority treatment under § 507(a). *See generally In re Raygoza*, 556 B.R. 813, 821 (Bankr. S.D. Tex. 2016) (holding that "an expense is incurred when a legal obligation to pay the debt arises"). The IRS is attempting to have "its cake and eat it too"[3] by filing the Claim against Debtor's bankruptcy estate for the tax liabilities of Debtor's alter-egos and yet argue that the Property, to which the taxes are attached, is "not a bankruptcy estate asset." *Compare* [Claim No. 1-1] *with* [ECF No. 146 at ¶ 1(c)]. Conversely, Debtor's Counsel's awarded attorney's fees qualify as administrative expenses allowed under § 507(a)(2). *In re DeSardi*, 340 B.R. at 801 (acknowledging that awarded attorney's fees for debtor's counsel are "entitled to § 507(a)(2)

---

[3] *City of Erie v. Pap's A.M.*, 529 U.S. 277, 326 (2000) (Stevens, J., dissenting).

priority"). Therefore, even if the IRS was not bound by the Plan, Debtor's Counsel's awarded fees would still be entitled to a higher priority than the IRS Claim for taxes under the Code. *See generally id.*

As this Court concluded that the IRS is bound by Plan, the Objection must be overruled because the terms of the Plan support the relief sought in the Motion. *See Espinosa*, 559 U.S. at 271. Therefore, this Court finds that the Motion should be granted, thereby allowing Debtor's Counsel to collect his administrative fees from the proceeds of the Property's Sale.

## V. CONCLUSION

Upon considering the issues in this case, this Court is presented with the complicated task of ensuring both adequate payment of creditor's liens and just compensation for counsel. In the Motion, Debtor seeks enforcement of the Plan's provisions that require administrative expenses—namely, Debtor's Counsel's fees—to be paid first from the proceeds of the sale of the Property. [ECF No. 144]. Although the IRS currently objects to the Plan provisions, the IRS is bound to the terms of the Plan because the IRS received notice, was afforded the opportunity to litigate the terms of the Plan, and chose not to utilize that opportunity to object nor appeal. Pursuant to *Espinosa* and *Treyson*, the time for the IRS to object to the Plan or appeal its confirmation has long since passed. *See Espinosa*, 559 U.S. at 271; *In re Treyson*, 2016 WL 1604347, at *14. Moreover, the IRS's contention that § 506(c) does not allow Debtor's Counsel to collect administrative fees from proceeds of the Property sale is without merit because Debtor's Counsel's administrative fees were awarded based on the time, nature, extent, and value of his attorney services pursuant to § 503(b)(4), rather than, as the IRS contends, in connection with Property's disposal. *See* [ECF No. 146 at 8]. Further, even if the administrative fees were disallowed pursuant to § 506(c), the IRS would remain bound to the Plan because the IRS

received notice and an opportunity to litigate prior to confirmation.  *See Espinosa*, 559 U.S. at 271; *In re Treyson*, 2016 WL 1604347, at *14.  Moreover, even if the Plan did not bind the IRS, § 507(a)(2) would statutorily prioritize Debtor's Counsel's administrative fees as second priority in contrast to the eighth priority for taxes the IRS would be entitled to pursuant to § 507(a)(8).  Although this Court seeks to ensure creditors are paid, this Court also desires to see counsel receive compensation for the professional services rendered during bankruptcy proceedings.  Consequently, it is this Court's duty to enforce the Plan by allowing Counsel to collect his administrative expenses from the proceeds of the sale of the Property.  Accordingly, the IRS' Objection, [ECF No. 146], is **OVERRULED** and Debtor's Motion to Enforce the Plan, [ECF No. 144], is hereby **GRANTED**.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 11/28/2016.

Eduardo V. Rodriguez
United States Bankruptcy Judge